**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES L. E.,**

                           **Plaintiff,**

    **v.**                                                    **No. 5:23-CV-0630**
                                                             **(BKS/CFH)**

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**
_____

**Brenda K. Sannes,**
**Chief United States District Judge[1]**


**DECISION & ORDER**

## I.     INTRODUCTION

Currently before the Court, in this Social Security action filed by James L. E. ("Plaintiff")[2] against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are (1) the Report and Recommendation and Order of United States Magistrate Judge Christian F. Hummel recommending that the Commissioner's decision be affirmed, and Plaintiff's complaint be dismissed, *see* Dkt. 14 ("R&R"),[3] and (2) Plaintiff's objections to the Report and Recommendation. *See* Dkt. 15 ("Plaintiff's Objections" or "Pl. Obj."). Defendant opposes each of Plaintiff's arguments. *See* Dkt. 16 ("Defendant's Brief" or "Def. Br."). For the

---

[1] This case was originally assigned to the Hon. Thomas J. McAvoy, Senior U.S. District Judge, and has been reassigned to the undersigned. *See* Dkt. 17.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Decision and Order will identify Plaintiff by first name and last initial.
[3] The Court presumes familiarity with the R&R.

reasons set forth below, Plaintiff's objections are overruled, and the Report and Recommendation is accepted and adopted in its entirety.

## II.    STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). "[O]bjections . . . must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Machicote v. Ercole*, 2011 WL 3809920, at *2 (S.D.N.Y., Aug. 25, 2011) (citations and interior quotation marks omitted). "[W]hen an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Fisher v. Miller*, No. 9:16-CV-1175 (GTS/ATB), 2018 WL 3854000, at *3 (N.D.N.Y. Aug. 14, 2018). Similarly, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); *see Timothy B. v. Comm'r of Soc. Sec.*, No. 8:17-CV-0399 (GTS/WBC), 2018 WL 3853999, at *1 (N.D.N.Y. Aug. 14, 2018) ("Where, however, an objecting party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.") (quotation marks and citations omitted), *aff'd sub nom. Barnaby v. Berryhill*, 773 Fed. Appx. 642 (2d Cir.  2019)(unpublished).

2

"Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance." *Id.; see Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312-13 (W.D.N.Y. 2009) (same).

After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . . The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III.   DISCUSSION

### Objections

Plaintiff frames his objections as follows:

1. The ALJ erred when failing to identify substantial evidence supporting the social interaction findings and when failing to explain the distinction between supervisors, coworkers, or the general public as now reflected in the RFC finding.

2. The ALJ erred when failing to provide a reason for not including postural limitations from the opinions found persuasive.

3. The ALJ relied upon vocational expert testimony of job numbers reflecting an OES group instead of a DOT title, and the Commissioner has not met his burden at step 5.

Pl. Obj., *passim*. Throughout his objections, Plaintiff argues that Judge Hummel erred in his assessment of these issues. *See id.* In opposition, the Commissioner argues that Plaintiff's objections are merely a repackaging of his original objections and arguments

made to Judge Hummel, and therefore the Court should apply the clear error standard.
*See* Def. Br., *passim*. The Commissioner further argues that Plaintiff fails to show that
Judge Hummel clearly erred in these assessments. *Id.*

For reasons discussed more fully below, Plaintiff's objections are overruled.

**Objection 1**

Objection 1 challenges the social interaction findings in the RFC, and Judge
Hummel's review of these findings.

As to Plaintiff's RFC generally, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 416.967(a), except he should avoid exposure to concentrated
> respiratory irritants; he retains the ability to understand and follow simple
> instructions and directions, perform simple tasks with supervision and
> independently, maintain attention/concentration for simple tasks, and regularly
> attend to a routine and maintain a schedule; he can interact with supervisors on
> an occasional basis throughout the work day after learning the his job duties from
> an instructional or demonstration lesson; he can work in proximity to co-workers,
> but should only have brief occasional interaction with them; he should have no
> contact with the public as part of his regular job duties, but can tolerate
> occasional, incidental brief contact with the public; he can make decisions
> directly related to the performance of simple work; he should work in a position
> where he is not responsible for the work of or required to supervise others; and
> there should be little change in daily work processes or routines.

Administrative Transcript, at 631-32.

With regard to Plaintiff's mental RFC, the ALJ found, after considering and explicitly
discussing evidence of Plaintiff's social limitations including the relevant medical
opinions, Plaintiff's subjective complaints, the largely normal psychiatric consultative
examinations from Drs. Noia and Shapiro, and the treating records from Plaintiff's
mental health provider and his primary care physician, *see* T. 627-645, that Plaintiff was
"only moderately limited in his ability to interact adequately with supervisors, co-

workers, and the public, and only moderately limited in his ability to regulate emotions, control behavior, and maintain well-being." *Id.* at 645.  Accordingly, the ALJ "formulated a residual functional capacity for the claimant that restricts him to a low-contact and reduced-stress work environment." *Id.*

As Judge Hummel explained, in reviewing a final decision of the Commissioner, a district court may not determine *de novo* whether an individual is disabled. R&R at 14 (citing 42 U.S.C. §§ 405(g), 1388(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)).  "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)).

"Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 4-5 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam), in turn citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)).  "The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts." *Simpson v. Comm'r of Soc. Sec. of United States*, No. 22 CIV. 10606 (SLC), 2024 WL 1300443, at *3 (S.D.N.Y. Mar. 26, 2024)(citing *Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999)).  Moreover, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a

denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary

order).

> The substantial evidence standard is "a very deferential standard of review . . . .
> [This] means once an ALJ finds facts, we can reject [them] only if a reasonable
> factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.,
> Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and
> internal quotations marks omitted). Where there is reasonable doubt as to
> whether the Commissioner applied the proper legal standards, the decision
> should not be affirmed even where the ultimate conclusion is arguably supported
> by substantial evidence. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148
> (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986). However, if the correct legal
> standards were applied and the ALJ's finding is supported by substantial
> evidence, this finding must be sustained "even where substantial evidence may
> support the plaintiff's position and despite that the court's independent analysis of
> the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.
> Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

R&R at 5.

To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the record as a whole. *See Matta v. Astrue*, 508

F. App'x 53, 56 (2d Cir. 2013) (summary order)("Although the ALJ's conclusion may not

perfectly correspond with any of the opinions of medical sources cited in his decision,

he was entitled to weigh all of the evidence available to make an RFC finding that was

consistent with the record as a whole."); *Marie W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-

1053 (WBC), 2021 WL 431656, at *3 (W.D.N.Y. Feb. 8, 2021)("Indeed, the ALJ is

obligated to formulate a plaintiff's RFC based on the record as a whole, not just upon

the medical opinions alone.")(citing *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F.

App'x 75, 79 (2d Cir. 2018)); *Siham H. v. Kijakazi*, No. 5:20-CV-1501 (DJS), 2022 WL

4465462, at *2 (N.D.N.Y. Sept. 26, 2022) ("'To determine on appeal whether the ALJ's

findings are supported by substantial evidence, a reviewing court considers the whole

record, examining evidence from both sides, because an analysis of the substantiality of

the evidence must also include that which detracts from its weight.'")(quoting *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)).  "The relevant inquiry is whether a reviewing court can fathom the ALJ's reasoning in relation to the record evidence as a whole." *Dustin P. v. Comm'r of Soc. Sec.*, No. 23-CV-455 (JLS), 2023 WL 8189976, at *5 (W.D.N.Y. Nov. 27, 2023)(citing *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)).

Judge Hummel found substantial evidence supports the ALJ's findings relating to social interactions. *See* R&R at 28-31.  In this regard, Judge Hummel correctly explained that "[t]he non-exertional portion of Plaintiff's RFC does not perfectly match any medical opinion; however, '[t]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.'" *Id.* at 28 (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)).

As Judge Hummel noted:

> The ALJ assessed Plaintiff as having a "mild limitation" in "understanding, remembering, and applying information"; a "moderate limitation" in "interacting with others"; a "mild limitation" in "concentrating, persisting, or maintaining pace"; and a "moderate limitation" in "adapting or managing oneself." T. at 628-30. The ALJ found the opinions of Drs. Hoffman, Marks, Fernandez, and Ferrin to be unpersuasive when they assessed only mild social limitations. T. at 631. In assigning a moderate limitation in interacting with others, the ALJ relied on Plaintiff's report of "having irritability, anger, and diminished self-esteem" during his assessment with Dr. Noia; while his assessment was otherwise normal, Dr. Noia noted Plaintiff's report that he "had difficulty getting along with friends and family." T. at 628. At the consultative examination with Dr. Shapiro, Plaintiff reported more significant psychiatric concerns, such as social withdrawal, lack of trust in others, hypervigilance, nervousness, defensiveness, "a hyperstartle response," and "daily panic attacks." *Id*.

R&R at 29.

Judge Hummel correctly stated that "'[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.'" *Id.* (quoting 42 U.S.C. §

423(d)(5)(A)). Judge Hummel also correctly stated that Plaintiff has the burden "'to prove a more restrictive RFC'" than assessed by the ALJ, *id.* 29-30 (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order), in turn citing 42 U.S.C. § 423(d)(5) and *Barry*, 606 F. App'x at 622), but found that Plaintiff had not met this burden here. *Id.* at 30.

Judge Hummel addressed Plaintiff's argument that the ALJ "'failed to identify evidentiary support [for] the findings regarding social interaction, and the arbitrary findings relating to Plaintiff's mental functioning harmed Plaintiff,'" *id.* (quoting Dkt. 11 at 23), and concluded:

> The ALJ fully considered and explicitly discussed evidence of Plaintiff's social limitations, and arrived at an RFC that does not perfectly match any single opinion or prior administrative medical finding in the record. *See* T. at 643-45. The ALJ found the opinion of Dr. Noia "not consistent with the treating records from the claimant's mental health provider, which show the claimant to have presented with a depressed and anxious mood, a circumstantial racing thought process with flight of ideas, preoccupied ruminations with obsessional/depressive thought content, and impairment of short-term memory." T. at 644. However, the ALJ noted that Plaintiff "has not received any treatment from a mental health provider since December 13, 2019," and has instead been prescribed Lexapro by his primary care physician with good results. *Id.* It is correct that Dr. Shapiro assigned "marked" limitations in connection with Plaintiff's abilities to interact with coworkers, supervisors, and the public, but the ALJ assessed her conclusions to be unsupported by her own generally normal exam results, and inconsistent with the rest of the record. T. at 644-45. The ALJ has articulated his supportability and consistency analysis to a legally-sufficient degree, and supported his assignment with substantial evidence; thus, the Court must "defer to the Commissioner's resolution of conflicting evidence." [*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)](citing [*Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)]. Although the ALJ rejected the marked limitations that Dr. Shapiro reached, he assigned greater limitations than the other opinions would have required: "[t]he fact that the ALJ afforded Plaintiff the benefit of the doubt and included [l]imitations in the RFC finding beyond those assessed by [the other medical sources] is not grounds for remand." *Ivey v. Comm'r of Soc. Sec.*, No 1:19-CV-00657 (EAW), 2020 WL 5046261, at *5 (W.D.N.Y. Aug 27, 2020).

R&R at 30-31.

Plaintiff contends, however, that the ALJ erred by failing to identify substantial evidence supporting the social interaction findings, and by failing to explain the distinction between supervisors, coworkers, or the general public as reflected in the RFC finding. Pl. Obj. at 9-18.  Plaintiff maintains that neither the ALJ nor Judge Hummel identifies any evidence explaining "how Plaintiff can have greater interactions with supervisors during the training period and then tolerate only occasional interactions," "how Plaintiff can [be] in proximity to coworkers, but should only have brief occasional interaction with them," and "how Plaintiff should have no contact with the public as part of his regular job duties, but can tolerate occasional, incidental brief contact with the public." *Id.* at 11.

Plaintiff acknowledges that in some circumstances an ALJ may make an RFC finding without treating source opinion evidence, but contends that in those circumstances the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source. *Id.* at 13-14.  Plaintiff argues that remand is required because the ALJ failed to construct an accurate and logical bridge between the information in the record and the conclusion that Plaintiff is not disabled; the ALJ did not explain his decision to a sufficient degree such that the Court can glean the rationale for it; the ALJ's findings are not tied to evidence; the record does not contain a medical opinion indicating the ability to function at the level found by the ALJ; the ALJ improperly interpreted raw medical data in functional terms, and improperly made the connection between the medical data and the functional findings; and the ALJ has not done enough to demonstrate how he came

to his decision and "thus has not supported his decision with substantial evidence." *Id.*
11-15.

Plaintiff also asserts that the "omission of limitations with interacting with
supervisors during a training period is not harmless" because the need to respond to
appropriate supervision is required for unskilled work, and because the failure to
complete a training or probationary period is tantamount to the inability to keep a job. *Id.*
at 16-18.  Pointing to the ALJ's conclusion that Plaintiff can interact with supervisors on
an occasional basis throughout the work day after learning the job duties from an
instructional or demonstration lesson, Plaintiff maintains that the "finding that Plaintiff
had greater abilities to interact with supervisors initially followed by greater limitations
after the training period" is arbitrary and unsupported. *Id.* at 17.  Plaintiff argues that the
ALJ "presumed Plaintiff could tolerate more than occasional interaction with supervisors
during a training period, and this would presume that the issues Plaintiff had with social
interaction could somehow be turned off during training." *Id.* at 18.  However, Plaintiff
asserts, there is no indication in the record that he had the ability to control his PTSD
symptoms "when interacting with certain people and for a time period adequate to learn
an occupation." *Id.*

The Commissioner argues that Plaintiff's Objection 1 largely repackages his
original arguments to Judge Hummel complaining that the social RFC limitations did not
match any medical opinion and lacked evidentiary support. Def. Br. at 2 (*comparing* Pl.
Obj. at 9-18, *with* Plaintiff's Original Brief, Dkt. 11, at 23-25). The Commissioner
contends that these challenges should be evaluated under the "clear error" standard,
and for the reasons set forth in Defendant's Brief, Plaintiff fails to show that Judge

Hummel clearly erred. *See* Def. Br. at 2-5.  Defendant further argues that Judge

Hummel correctly concluded that the ALJ had supportably found that the record as a

whole supported only moderate limitation in interacting with others. *See id.* at 2-4.

Moreover, Defendant contends:

Plaintiff has once again failed to prove that he required greater social RFC
limitations as he has cited no evidence beyond Dr. Shapiro's opinion suggesting
that he has marked or greater social limitations. *See* Pl. Obj. at 9-18; *Smith*, 740
F. App'x at 726. And nowhere did Magistrate Judge Hummel conclude that,
because Plaintiff carries the burden to prove his RFC, the ALJ was excused from
supporting the decision with substantial evidence. *See* Pl. Obj. at 13-15. Nor did
the ALJ craft the social RFC in a vacuum. Pl. Memo. at 15-16. As Plaintiff fails to
acknowledge, the ALJ explicitly found Dr. Noia's opinion was "partially
persuasive" (R. 643), and Dr. Shapiro's opinion was "less persuasive" than Dr.
Noia's (R. 644). That the ALJ did not adopt either opinion in its entirety is
irrelevant because, as Magistrate Judge Hummel pointed out, the RFC did not
have to perfectly match any opinion. *See* R&R at 28; *Schillo*, 31 F.4th at 78.

Def. Br. at 4.

The Court, having reviewed the administrative record, the ALJ's decision, and

Judge Hummel's assessment of the evidence supporting the ALJ's assignment of social

limitations, finds no error by the ALJ or Judge Hummel.  Here, as the ALJ indicated,

Plaintiff had been diagnosed with certain psychiatric conditions, including post-traumatic

stress disorder and major depressive disorder, primarily arising from the murder of his

sons in 2009 and 2016, respectively. *See* T. 638-640. The record reflects that Plaintiff's

psychiatric conditions caused him difficulties with regulating emotions, controlling

behavior, and maintaining well-being, and, relatedly, difficulties interacting with others

due to Plaintiff's anxiety, depression, and distrust of others. *See* T. 638-41; T. 643-45.

In assessing Plaintiff's mental residual functional capacity, the ALJ pointed to

medical evidence from Drs. Noia and Shapiro that indicated that Plaintiff's psychiatric

conditions could cause limitations in interacting with supervisors, coworkers, and the

public; limitations in regulating emotions, controlling behavior, and maintaining well-being; and that might interfere with Plaintiff's ability to function on a daily basis. *See* T. 644-45.  However, the ALJ did not adopt the social limitations assessed by either Dr. Noia or Dr. Shapiro, but rather, as indicated by Judge Hummel, articulated his supportability and consistency analysis [for Drs. Noia's and Shapiro's opinions] to a legally-sufficient degree, and supported his assignment [of social limitations] with substantial evidence." R&R 30.

In this regard, the ALJ indicated:

> In establishing the claimant's mental residual functional capacity, the undersigned finds the September 19, 2019 opinion that was rendered by Dr. Noia, who performed a consultative psychological examination of the claimant, to be partially persuasive (Exhibit 7F). In his medical source statement, Dr. Noia opined that the claimant appeared to have no limitations understanding, remembering, or applying simple directions and instructions; mild limitations understanding, remembering, or applying complex directions and instructions; no limitations using reasoning and judgment to make work-related decisions; mild limitations interacting adequately with supervisors, co-workers, and the public; no limitations sustaining concentration and performing a task at a consistent pace; no limitations sustaining an ordinary routine and regular attendance at work; moderate limitations regulating emotions, controlling behavior, and maintaining well-being; no limitations maintaining personal hygiene and wearing appropriate attire; and no limitations being aware of normal hazards and taking appropriate precautions (Exhibit 7F). Dr. Noia further found that the claimant's difficulties were caused by psychiatric problems (Exhibit 7F). As a result, Dr. Noia concluded that the claimant's psychiatric problems might at times interfere with his ability to function on a daily basis (Exhibit 7F).

T. 644.

The ALJ noted that "Dr. Noia's opinion is supported by the findings he made in his mental status examination of the claimant," but that the opinion is "not consistent with the treating records from the claimant's mental health provider, which show the claimant to have presented with a depressed and anxious mood, a circumstantial racing thought process with flight of ideas, preoccupied ruminations with

obsessional/depressive thought content, and impairment of short-term memory." T. at

644. However, the ALJ also noted,

> the claimant has not received any treatment from a mental health provider since December 13, 2019. Since that time, the claimant has been treating for his psychiatric condition with a primary care physician who prescribes Lexapro for the claimant's mental health issues (Exhibits 20F, 22F). Mental status exams of the claimant by his primary care physician since December 13, 2019 have been consistently unremarkable, and the treating records from his primary care physician show that the claimant's psychiatric symptomatology has generally been under fairly good control with medication during this period of time (Exhibits 20F, 22F).
>
> Furthermore, the undersigned declines to adopt Dr. Noia's determination that the claimant was only mildly limited in his ability to interact adequately with supervisors, co-workers, and the public. In addition to being inconsistent with the claimant's sworn testimony at his hearings, this portion of the opinion by Dr. Noia is also inconsistent with the assessment of the claimant by Dr. Shapiro (Exhibit 23F).

T. 644.

> In evaluating Dr. Shapiro's opinion, the ALJ indicated:
>
> The undersigned finds the August 2, 2021 opinion that was rendered by Dr. Shapiro, who also performed a consultative psychiatric evaluation of the claimant, to be less persuasive (Exhibit 23F). In her medical source statement, Dr. Shapiro opined that the claimant did not appear to have any limitations understanding, remembering, and applying simple or complex instructions and directions or using reason and judgment to make work-related decisions; that he had marked limitations interacting adequately with supervisors, co-workers, and the public; that he had mild-to-moderate limitations sustaining concentration and performing a task at a consistent pace depending upon his level of anxiety; that he had mild-to-moderate limitations sustaining an ordinary routine and regular attendance at work; that he had marked limitations regulating emotions, controlling behavior, and maintaining well-being; and that he had no limitations maintaining personal hygiene and appropriate attire or being aware of normal hazards and taking appropriate precautions (Exhibit 23F). Dr. Shapiro further found that the claimant's difficulties were caused by psychiatric problems (Exhibit 23F). Consequently, Dr. Shapiro concluded that the claimant's psychiatric problems might significantly interfere with his ability to function on a daily basis (Exhibit 23F).

T. 644.

Nevertheless, the ALJ concluded, "Dr. Shapiro's determination that the claimant had a marked limitation in his ability to interact adequately with supervisors, co-workers, and the public, as well as the determination by Dr. Shapiro that the claimant had a marked limitation in his ability to regulate emotions, control behavior, and maintain well-being, are both unsupported by any objective clinical findings that were made by Dr. Shapiro during the course of her evaluation of the claimant." *Id.* In this regard, the ALJ indicated:

> The mental status exam of the claimant by Dr. Shapiro was generally within normal limits, except for a finding that the claimant's mood was suffering because he was in so much pain, and except for a finding that the claimant's general fund of information was below-average (Exhibit 23F). Furthermore, this portion of the opinion by Dr. Shapiro is inconsistent with the claimant's lack of any specialized mental health intervention since December 13, 2019. This portion of the opinion by Dr. Shapiro is also inconsistent with the claimant's treating records from his primary care physician subsequent to December 13, 2019. In addition to containing mental status exams of the claimant that are repeatedly within normal limits, these treating records from the claimant's primary care physician demonstrate that the psychiatric symptomatology of the claimant has generally been under fairly good control with medication since December 13, 2019 (Exhibits 20F, 22F). Consequently, the undersigned has found the claimant to be only moderately limited in his ability to interact adequately with supervisors, co-workers, and the public, and only moderately limited in his ability to regulate emotions, control behavior, and maintain well-being. As a result, the undersigned has formulated a residual functional capacity for the claimant that restricts him to a low-contact and reduced-stress work environment.

T. 644-45.

As is apparent, the ALJ relied upon Plaintiff's treatment history for his psychiatric conditions in assessing the mental RFC.  Although the ALJ referenced only portions of this treatment history in the portions of his decision set forth above, the record reflects that the ALJ carefully examined Plaintiff's treatment history between 2018 and 2023,

and, as stated, relied upon this history in assessing Plaintiff's RFC. *See* T. 638-41;[4] T. 643-45.  This medical history provides substantial evidence that Plaintiff's depression and anxiety were diminished and/or were adequately controlled by medication, thus providing a basis for the ALJ's conclusion that Plaintiff was only moderately limited in his ability to interact adequately with supervisors, coworkers, and the public, and only moderately limited in his ability to regulate emotions, control behavior, and maintain well-being. *See, e.g., Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *8 (W.D.N.Y. Sept. 10, 2024) ("The ALJ again ties the RFC limitations in interacting with others to his ability to regulate his emotions when he discusses Dr. Santarpia's opined limitations later in the decision. . . .  Accordingly, I find that ALJ Bell's analysis, read as a whole, satisfies his obligation to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached. He has adequately explained how he incorporated Dr. Santarpia's limitations into the RFC.")(internal quotation marks and citation omitted); *cf. Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119 (2d Cir. 2018) (summary order)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient

---

[4] As recounted by the ALJ, this medical history indicates, *inter alia*, that (1) Plaintiff had not received any treatment from a mental health provider since December 13, 2019; (2) on February 6, 2020, while being seen by his primary care physician, Plaintiff denied having any anxiety or depression, yet, despite an unremarkable mental status exam, Plaintiff was diagnosed with depression and started on Lexapro; (3) during his appointment with his primary care physician on January 26, 2021, Plaintiff denied having any anxiety or depression, his mental status exam was within normal limits, and Plaintiff's depression was assessed as having improved on Lexapro; (4) on June 29, 2021, Plaintiff's review of system was positive for anxiety and depression, yet his mental status exam continued to be unremarkable, and his depression was assessed by his primary care physician as being fairly well-controlled with the then-current dose of Lexapro; and (5) on December 18, 2022, Plaintiff reported to his primary care physician that he was depressed but denied having any anxiety. *See* T. 638-41.

says in consultations." ); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 884-85 (D. Vt. 2021)

(Although "ALJs are no longer directed to afford controlling weight to treating source

opinions – no matter how well supported and consistent with the record they may be –

the regulations still recognize the 'foundational nature' of the observations of treating

sources," particularly in cases involving mental health.).

 While neither Dr. Noia nor Dr. Shapiro opined that Plaintiff was moderately limited

in interacting with others, Dr. Noia indicated that Plaintiff "appears to have moderate

limitations regulating emotions, controlling behavior, and maintaining well-being." T. 552.

Further, when assessing Plaintiff's abilities to interact with others and regulate emotions,

control behavior, and maintain well-being, the ALJ assessed evidence in the record as a

whole, including Drs. Noia's and Shapiro's opinions and findings, and Plaintiff's

subjective complaints of the effects of his psychiatric conditions.

 For instance, when assessing the second functional area of the "paragraph B"

criteria, interacting with others, the ALJ concluded, after examining the medical and

other evidence in the record, that Plaintiff had a moderate limitation in this regard. *See*

T. 628-29.[5]  When assessing the fourth functional area, adapting or managing oneself,

---

[5] In reaching this conclusion, the ALJ noted, *inter alia*, that during his September 19, 2019 consultative psychiatric examination with Dr. Noia, Plaintiff's  demeanor and responsiveness to questions were found to be cooperative; his manner of relating, social skills, and overall presentation were determined to be adequate; his speech intelligibility was fluent; the quality of his voice was clear; his expressive language and receptive language were adequate; his motor behavior was normal; his eye contact was appropriate; and Plaintiff reported that he "occasionally did some shopping and that he sometimes drove, but did not use public transportation." T. 628.

Furthermore, the ALJ indicated that during his August 2, 2021 consultative psychiatric evaluation with Dr. Shapiro, Plaintiff's demeanor and responsiveness to questions were cooperative; his manner of relating, social skills, and overall presentation were adequate; his motor behavior was normal; his eye contact was appropriately focused; Plaintiff indicated that he did not do any shopping because of back and knee pain; Plaintiff indicated that he drove, but did not take public transportation; Plaintiff indicated that he socialized only with the people with whom he lived; and Plaintiff reported that his hobby was watching his kids play sports. T. 628-29.

the ALJ concluded, after examining Drs. Noia's and Shapiro's assessments, *see* T. 629-30, that Plaintiff "has a moderate limitation attributable to his mental impairment or combination of impairments." T. 629.[6]  Although the ALJ concluded that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least one extreme limitation or two marked limitations, T. 630, and although the ALJ indicated that the limitations identified in the "paragraph B" are not a residual functional capacity assessment, T. 631, the referenced portions of the record provide substantial evidence supporting the conclusion that Plaintiff was not totally precluded from

---

[6] In reaching this conclusion, the ALJ noted that on September 19, 2019 during his consultative psychiatric examination with Dr. Noia, Plaintiff acknowledged that "his appetite was normal; he did not report any significant manic- or anxiety-related symptoms, or any symptoms of a formal thought disorder; he denied having any suicidal or homicidal ideation; he was appropriately dressed, with good personal hygiene and grooming; Dr. Noia assessed Plaintiff's insight and judgment to be good; Plaintiff reported being able to dress, bathe, and groom himself; Plaintiffs contended that because of medical problems, he did not cook and prepare food, do general cleaning, or laundry; Plaintiff reported that he occasionally did some shopping; that he could manage money; that he sometimes drove; that he did not use public transportation; and that he spent his days resting, watching television, and listening to the radio. *Id.* at 630.

Further, the ALJ noted that during his August 2, 2021 consultative psychiatric evaluation with Dr. Shapiro, Plaintiff declared that he awakened five to six times nightly;  he had a loss of appetite with a 13-pound weight loss in the past two months; he was depressed and fatigued; he had feelings of guilt and hopelessness; he had a loss of usual interest and diminished sense of pleasure; he was socially withdrawn; he stated that he was only around the people in his household; that he had witnessed violence and death; that his two sons were murdered in 2009 and 2016; that he had nightmares, flashbacks, and recurrent distressing memories of what he experienced and witnessed; that he did not trust people; that he became hypervigilant, nervous, and defensive around others; that he had a hyperstartle response; that he did not want his kids going out at all; that his anxiety, because of his past trauma, influenced every decision he made; that he did not want his kids being away from home or going out to eat, and had to have them text every half-hour when they were away from the house; that he experienced panic attacks characterized by heart palpitations, sweating, dizziness, breathing difficulties, and trembling; that his panic attacks occurred daily and could last all day; that his panic attacks were precipitated by memories and if his kids went out anywhere; that he had long- and short-term memory deficits; and that he had difficulty concentrating. T. 630.  Nevertheless, the ALJ noted, on August 2, 2021, Plaintiff denied having any suicidal or homicidal ideation, plan or intent in the past 30 days; told Dr. Shapiro that he could dress, bathe, groom himself; that he did not do any cooking, cleaning, laundry, or shopping because of his back pain and knee pain, which prevented him from standing or walking for long; that he could manage his own money; that he drove, but did not take public transportation; that he socialized only with the people with whom he lived; that he talked to his mother on occasion, and their relationship was okay; that his hobby was watching his children play sports; and that he spent time during the day watching television and listening to the radio. T. 630. (Exhibit 23F). Dr. Shapiro observed that the claimant was appropriately dressed and well groomed, and determined that Plaintiff had fair insight and fair judgment. T. 630.

interacting with others, especially in light of the fact that during his consultative psychiatric examinations Plaintiff's demeanor and responsiveness to questions were found to be cooperative; his manner of relating, social skills, and overall presentation were determined to be adequate; he was assessed by Dr. Shapiro on August 2, 2021 as having fair insight and fair judgment; he reported that he shopped (when his back and knee pain allowed); and he reported that his hobby was watching his children play sports.

The Court presumes that Plaintiff's activities of shopping and watching his children play sports occurred in public areas attended by others with whom Plaintiff would necessarily interact, even if only briefly (i.e., cashiers, ticket takers, concession stand workers, other spectators at the sporting events). This provides substantial evidence supporting the conclusions that Plaintiff could work in proximity to coworkers provided he only had brief occasional interactions with them; that Plaintiff could interact with supervisors on an occasional basis throughout the workday; and that he should work in a position that had no contact with the public as part of the regular job duties, but could tolerate occasional, incidental brief contact with the public.

In addition, the ALJ referenced the medical evidence in determining whether the "paragraph C" criteria of listings 12.04 and 12.15 had been satisfied, finding:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not demonstrate that the claimant has had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. There is nothing of record to suggest that the claimant has required a highly structured setting to diminish the symptoms and signs of his psychiatric condition during the period under consideration, and that, despite the diminished symptoms and signs, he has achieved only marginal adjustment.

18

T. 630.  In reaching conclusions "with respect to the claimant's mental impairment or combination of impairments," T. 631, the ALJ analyzed the persuasiveness and consistency of the opinions of State Agency review psychologists Hoffman, Marks, Fernandez, and Ferrin. *See* T. 631. As Judge Hummel indicated, the ALJ assessed Plaintiff as having a "mild limitation" in "understanding, remembering, and applying information"; a "moderate limitation" in "interacting with others"; a "mild limitation" in "concentrating, persisting, or maintaining pace"; and a "moderate limitation" in "adapting or managing oneself." T. at 628-30.  The ALJ found the opinions of Drs. Hoffman, Marks, Fernandez, and Ferrin to be unpersuasive when they assessed only mild social limitations. T. at 631. In assigning a moderate limitation in interacting with others, the ALJ relied on Plaintiff's report of "having irritability, anger, and diminished self-esteem" during his assessment with Dr. Noia; and while his assessment was otherwise normal, Dr. Noia noted Plaintiff's report that he "had difficulty getting along with friends and family." T. at 628.  Further, the ALJ noted that at the consultative examination with Dr. Shapiro, Plaintiff reported more significant psychiatric concerns such as social withdrawal, lack of trust in others, hypervigilance, nervousness, defensiveness, "a hyperstartle response," and "daily panic attacks." *Id*.

In addition, the ALJ indicated that he fully considered Plaintiff's "subjective complaints of pain, fatigue, and weakness, as well as his cognitive symptomatology and psychiatric symptomatology, together with any resulting functional limitations." T. 641.[7] In arriving at his RFC, the ALJ indicated, *inter alia*:

---

[7] In this regard, the ALJ indicated that Plaintiff testified on October 30, 2020 that he drives once or twice a week; that he has depression due to losing two sons to gun violence; that he has limitations interacting with others; that he is paranoid about being in crowds; and that he only has a short-term memory, because, due to depression, his memory is going away. T. 641.  The ALJ also indicated that Plaintiff

No matter how sincere . . . , statements by interested parties cannot overcome the medical evidence of record (SSR 16-3p). Furthermore, an individual's statements about his or her symptoms alone are insufficient to establish that an individual is disabled (SSR 16-3p).

* * *

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record, for the reasons explained in this decision.

T. 641-642.

The Court finds, contrary to Plaintiff's contention, the ALJ did not impermissibly interpret raw medical data in functional terms, or improperly make the connection between the medical data in the functional findings.  Rather, the ALJ relied upon the medical evidence, the consultative assessments, Plaintiff's statements, and evidence of Plaintiff's activities of daily living in arriving at the mental RFC, as he was entitled to do. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020)(summary order)(although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020)(summary order)(the ALJ did not attempt to forge his own medical opinions based on raw data or reject diagnoses provided by medical professionals, the ALJ properly considered medical opinions and

---

testified on January 10, 2023 that his two sons were killed; that he is no longer receiving any mental health treatment; that family members, friends, and people from different areas trigger his anger; that he has become a homebody; that he uses his kids "as a crutch" because they keep him "humble" and more focused; that his daughter drives him around; that he tries to stay away from certain situations, like shopping; and that he tries to avoid any outside people. T. 641.

medical notes in formulating RFC); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)(summary order)("the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-0380 (JJM), 2024 WL 4131237, at *4 (W.D.N.Y. Sept. 10, 2024)("In this case, the ALJ was entitled to craft an RFC based upon all the evidence in the record and to reject portions of medical opinions that were in conflict with other evidence, such as treatment notes.")(citing *Patrick R. v. Commissioner of Social Security*, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]t has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence")); *Jose F. v. O'Malley*, No. 22-CV-325F, 2024 WL 4210900, at *8 (W.D.N.Y. Sept. 17, 2024)("So long as the evidence in the administrative record, including diagnostic evidence and treatment notes support the ALJ's RFC determination, it cannot be said that 'no reasonable factfinder could have reached the same conclusion,' so as to uphold an RFC assessment upon judicial review.")(quoting *Schillo*, 31 F.4th at 78)(additional citations omitted)); *Jose R. A. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-01377 (AMN), 2024 WL 4616253, at *6 (N.D.N.Y. Mar. 22, 2024)("In addition to the medical opinions, the ALJ also properly considered and cited to

medical treatment records, hearing testimony, and Plaintiff's activities of daily living in formulating the RFC.").

As Judge Hummel correctly indicated, "[t]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.'" R&R at 28 (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)); *see Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022)(same); *Cook*, 818 F. App'x at 109; *Ramsey*, 830 F. App'x at 39; *Monroe*, 676 F. App'x at 8; *Matta*, 508 F. App'x at 56; *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00858 EAW, 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024)("[T]here is no requirement that an ALJ's RFC finding correspond to a single medical opinion.")(citing *Matta*, 508 F. App'x at 56); *see also Jason R. v. Comm'r of Soc. Sec.*, No. 19-CV-1641-FPG, 2021 WL 1131265, at *3 (W.D.N.Y. Mar. 24, 2021)("[T]here are circumstances where an ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC.")(citations omitted).

> At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority ... [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where ... the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

> While the ALJ may not rely on [his] own lay opinion in formulating the RFC, the fact that the RFC does not perfectly correspond to one medical opinion is not evidence that [he] has done so. *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT,

2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("The fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." (quoting *Russ v. Commissioner of Social Security*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))). The ALJ is free to base [his] RFC findings on the portions of the various medical opinions that [he] found persuasive, along with the other evidence of record.

*Nichole K.*, 2024 WL 3022592, at *7.

Here, as indicated above, the ALJ considered and discussed evidence of Plaintiff's social limitations including the relevant medical opinions and assessments, Plaintiff's subjective complaints, the largely normal psychiatric consultative examinations from Drs. Noia and Shapiro, and the treating records from Plaintiff's mental health provider and his primary care physician in reaching the mental RFC conclusions. T. 627-45. "[I]t is readily apparent that the ALJ did not simply rely on [his] own lay opinion in making an RFC finding." *Nichole K.*, 2024 WL 3022592, at *7; *see id.* ("In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians.").

That the RFC is more restrictive than the social limitations opined by Drs. Noia, Hoffman, Marks, Fernandez, and Ferrin does not demonstrate error. *See id.* ("That the RFC is more restrictive than the limitations opined by Dr. Santarpia does not demonstrate error.")(citing *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony");

*Catalfamo v. Berryhill*, 2019 WL 1128838, at *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary")); *see also Elizabeth P. v. Comm'r of Soc. Sec.,* No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *10 (W.D.N.Y. June 3, 2024) ("While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that the ALJ was relying on his own lay opinion in assessing Plaintiff's RFC or that the RFC finding is not supported by substantial evidence.").  To the extent Plaintiff may be relying on Dr. Shapiro's assessment that he had "marked" limitations in connection with his abilities to interact with coworkers, supervisors, and the public, and marked limitations regulating emotions, controlling behavior, and maintaining well-being, the Court agrees with the ALJ's assessment discounting Dr. Shapiro's conclusions.

Furthermore, the ALJ presented to the vocational expert a hypothetical RFC that distinguished a hypothetical person's capabilities in interacting with coworkers, supervisors, and the public. In this regard, the following exchange occurred between the ALJ and the VE:

ALJ: Okay. You're familiar with the Agency's definitions regarding skill levels and exertional levels of work?

VE: Yes, I am.

ALJ: And if you give us an opinion which conflicts with the information in the Dictionary of Occupational Titles, or if your answer to a question is based upon a source outside of the DOT, would you please tell us?

VE: Yes.

ALJ: So I think what I'm going to do here is conclude that there's really no evidence of any prior relevant work that we need to discuss. So we're going to move ahead in the analysis. So let's consider an individual of [Plaintiff's] age,

24

which is currently 48, educational level, is 11th grade, work background or lack thereof, and is reflected in the file and testimony. And what I'll do is I'll give you a hypothetical residual functional capacity, and the question is whether there'd be any full-time work available for an individual with that profile, with these limitations. Okay?

VE: Okay.

ALJ: All right. So let's start out at the sedentary exertional level as the Agency defines it. So that's sedentary sit, stand, walk, lift and carry as set forth in the Agency regulations. In addition, this person should avoid exposure to concentrated respiratory irritants. Now, this person would retain the ability to understand and follow simple instructions and directions. They could perform simple tasks with supervision and independently. They could maintain attention and concentration for simple tasks, regularly attend to a routine, and maintain a schedule. So this person could interact with supervisors on an occasional basis throughout the workday.[8] They could work in proximity to coworkers, but they should only have brief, occasional interaction with them. They should have no contact with the public as part of their regular job duties, but they could tolerate occasional, incidental, brief contact with the public. Finally, they could make decisions directly related to the performance of simple work. And they should work in a position where there are not responsible for the work of others, or where they would have to supervise others. Finally, there should be little change in daily work processes or routines. So would there be any full-time unskilled work with those limitations?

VE: There would be that of a sorter, DOT 521.687-018. It's an SVP of 2, at sedentary. There's approximately 39,000 positions in the nation. There would be that of a table worker, DOT 739.687-182, an SVP of 2, at sedentary. Approximately 32,000 positions in the nation. And there would be that of a final assembler, DOT 713.687-018, an SVP of 2, at sedentary. Approximately 27,000 positions in the nation.

ALJ: Okay. Now, would that be an exhaustive list, or is that a representative list?

VE: That would be representative.

T. 668-671.

---

[8] As Judge Hummel recognized in reviewing whether the ALJ had met his burden at Step Five, the ALJ provided Plaintiff's RFC as eventually adopted with the omission of the portion stating that Plaintiff can interact with supervisors on an occasional basis throughout the workday "*after learning [] his job duties from an instructional or demonstration lesson.*" R&R at 19 (citing T. 669-71).

After the ALJ asked whether there would be positions available for an individual who would be off-task on a regular basis outside of breaks or meal periods, or for an individual who would have unscheduled absences, *see* T. 671, the VE testified that based upon her professional experience there would not be positions available for a person who was off-task 10 percent or more of the time, or who had more than one absence a month and whose absences occurred more than seven times a year. T. 671. The ALJ then returned to the RFC, asking: "Okay. Now, if we go to the residual functional capacity that I gave you, were there any elements contained in that that are not directly covered by the DOT?" T. 672.  The VE responded: "I don't believe so. It doesn't specifically address, you know, interaction with others by different individuals, supervisors, public, co-workers. So I guess the answer would be based on my professional experience." T. 672.

The ALJ asked the VE whether there would be "any full-time unskilled work for the individual we're considering with those limitations?" T. 670.  The VE testified that a person with the RFC provided by the ALJ could perform the representative positions of sorter, table worker, and final assembler.  T. 670-71.

After the Plaintiff's representative asked the VE questions about the method used to arrive at the numbers of the representative positions, the ALJ inquired further about the numbers of positions available.  *See* T. 672-74.  The ALJ concluded:

> [T]he vocational expert affirmed that her testimony at the hearing was consistent with the DOT, and, to the extent the DOT is silent, such as with respect to the limitations contained in the hypothetical question that the undersigned posed to the vocational expert regarding interaction with the public and others, the vocational expert supplemented her testimony based on her knowledge of how the jobs she supplied are performed, and based upon her education, training, and professional experience working in the field. The undersigned finds the conclusions of the vocational expert to be credible, because of the vocational

expert's knowledge regarding the types and numbers of jobs in the national economy, and because of the vocational expert's knowledge regarding the exertional and nonexertional requirements of jobs in the national economy.

T. 647.

The VE's testimony provides substantial evidence supporting the conclusions that work existed for a person who could interact with supervisors on an occasional basis throughout the workday; could work in proximity to coworkers but should only have brief, occasional interaction with them; and who could work in a position that required no contact with the public as part of their regular job duties, but who could tolerate occasional, incidental, brief contact with the public. Thus, the VE's testimony provides substantial evidence supporting the ALJ's ultimate determination to the extent it is based on the lion's share of the mental RFC.

However, pointing to the ALJ's conclusion that the Plaintiff could interact with supervisors on an occasional basis throughout the workday *after learning his job duties from instructional or demonstration lesson*, Plaintiff argues he was harmed because the record omitted support for "limitations with interacting with supervisors during a training period," and that "the ability to respond appropriate[ly] to supervisors is required for unskilled work." Pl. Obj. at 16-17. Further, citing to *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020) and its progeny for the proposition that the inability to complete a probationary or training period means that a claimant cannot fulfill "'a necessary prerequisite to the ability to engage in substantial gainful activity,'" Pl. Obj. at 17 (quoting *Sczepanski*, 946 F.3d at 159), Plaintiff argues:

> The ALJ presumed Plaintiff could tolerate more than occasional interaction with supervisors during a training period, and this would presume that the issues Plaintiff had with social interaction could be somehow turned off during training. There is no indication in the record that Plaintiff had the ability to control his

PTSD symptoms when interacting with certain people and for a time period adequate to learn an occupation. The arbitrary findings did not benefit Plaintiff given that it is unlikely that Plaintiff could learn any occupation if he could not interact with others occasionally, including supervisors, and the unexplained finding regarding social interaction with supervisors appears to be tailored to comport with a denial of disability benefits. Thus, the mental RFC finding is unsupported by substantial evidence and remand is required.

*Id.* at 18.

Plaintiff's arguments are without merit. The Court finds that the combination of the ALJ's assessment of only moderate limitations in interacting with others; only moderate limitations in the ability to regulate emotions, control behavior, and maintain well-being; and the VE's testimony, provides substantial evidence supporting the ALJ's ultimate determination.

The VE indicated that each of the identified positions had "an SVP of 2, at sedentary." An SVP, or specific vocational preparation, refers to the amount of time it takes for an individual to learn a given job. *Laing v. Comm'r of Soc. Sec.*, No. 15 CIV. 7764 (HBP), 2017 WL 934715, at *7, n. 7 (S.D.N.Y. Mar. 9, 2017)(citations omitted); *see Valderrama v. Comm'r of Soc. Sec.*, No. 22-CV-8287 (ALC), 2024 WL 3887161, at *3 (S.D.N.Y. Aug. 21, 2024)("An SVP is the amount of time required for a typical claimant to '[l]earn the techniques, [a]cquire the information, and [d]evelop the facility needed for average performance in a job.'")(quoting Social Security Administration Program Operation Manual System DI 25001.001A.77, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#a77). "It utilizes a scale from one to nine; the higher the number, the greater the skill required to do the job." *Laing*, 2017 WL 934715, at *7, n. 7 (citations omitted). "SVPs 1 and 2 correspond to 'unskilled work,' which is 'work which needs little or no judgment to do' and involves 'simple duties

that can be learned on the job in a short period of time.... [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.'" *Regino v. Comm'r of Soc. Sec.*, No. 20CV8518RABCM, 2022 WL 4369919, at *8, n. 7 (S.D.N.Y. Aug. 31, 2022), *report and recommendation adopted sub nom. Regino v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-8518 (RA), 2022 WL 4368187 (S.D.N.Y. Sept. 21, 2022)(quoting  20 C.F.R. § 416.968(a)).  "An SVP of two means that 'it takes anything more than a short demonstration, and potentially up to thirty days, to learn a job.'" *Laing*, 2017 WL 934715, at *7, n. 7 (quoting  *Rodriguez v. Astrue*, 07 Civ. 534 (WHP)(MHD), 2009 WL 637154 at *10 n.23 (S.D.N.Y. Mar. 9, 2009), in turn citing Jeffrey Scott Wolfe & Lisa B. Proszek, *Social Security Disability and the Legal Profession* 163 (2002)).

The VE's testimony that a person who could only have occasional interactions with supervisors during the workday, as the hypothetical RFC was explained to the VE, could be interpreted by a reasonable person as supporting the conclusion that the putative claimant could fulfill the functions of the identified positions, including performing the necessary training for the identified positions.  Put another way, the VE's conclusion, based upon her education, training, and professional experience working in the field, that a person who could only withstand occasional contact with his supervisors during a workday – as the VE was instructed - provides substantial evidence that Plaintiff could fulfill the training requirements of the identified positions despite moderate limitations in interacting with his supervisors during the workday. Indeed, the ALJ found that the conclusions of the vocational expert to be credible "because of the vocational expert's knowledge regarding the types and numbers of jobs in the national economy,

and because of the vocational expert's knowledge regarding the exertional and nonexertional requirements of jobs in the national economy." T. 647.

Furthermore, while the ALJ's phrasing in the RFC conclusions of Plaintiff's ability to interact with supervisors is imprecise at best, the record as a whole provides substantial evidence defeating the underlying proposition of Plaintiff's objection – that is, that Plaintiff lacked the ability to control his PTSD symptoms when interacting with supervisors such that he could learn the representative positions.  As explained above, there is substantial evidence for the ALJ's conclusions that Plaintiff was only moderately limited in his ability to interact adequately with others (including supervisors), and only moderately limited in his ability to regulate emotions, control behavior, and maintain well-being.  It is a reasonable inference that someone with only moderate limitations in interacting with others, including supervisors, and only moderate limitations in the ability to regulate emotions, control behavior, and maintain well-being, could fulfill the training requirements of the representative positions, even if the training for the positions required more interactions with supervisors than learning the position through an instructional or demonstration lesson.

While Plaintiff is correct that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilit[y] ... to respond appropriately to supervision," *see* SSR 85-15, 1985 WL 56857 at *4 (S.S.A. 1985), the ALJ determined that Plaintiff retained the ability to understand and follow simple instructions and directions, could perform simple tasks with supervision and independently, could maintain attention/concentration for simple tasks, and could regularly attend to a routine. *See* T. 631-32.  Under these circumstances, the ALJ properly formulated an

RFC that restricts Plaintiff to a low-contact and reduced-stress work environment. *See Terrence S. B.*, 2024 WL 4131237, at *7 (The ALJ "properly incorporated into the RFC limitations on plaintiff's ability to interact with others in order to account for his limitations in regulating emotions, controlling behavior, and maintaining well-being."); *id.* ("Up to moderate limitations in the functional area of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC by limiting a plaintiff to simple, routine work with limited interactions with others.")(citing *Michelle K. v. Commissioner of Social Security*, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021) (RFC limiting plaintiff to "simple, routine, and repetitive tasks, making simple work-related decisions, and occasionally interacting with supervisors, coworkers, and the public" was consistent with limitations in the doctor's opinion that included moderate limitations in the ability to "regulate emotions, control behavior, and maintain well-being"); *David B. v. Commissioner of Social Security*, 2021 WL 6133282, *2-3 (W.D.N.Y. 2021) (affirming ALJ's determination limiting plaintiff to "simple, routine, repetitive work which did not require more than occasional contact with others" where the consultative examiner and state agency reviewer found plaintiff had, *inter alia*, mild-to-moderate limitations in regulating emotions, controlling behavior, and maintaining well-being); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017)("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning."); *Sipe v. Astrue*, 873 F. Supp. 2d 471, 481 (N.D.N.Y. 2012) (holding that moderate limitations in "relating to instructions, concentration, [and] attendance" are consistent with unskilled work); *Michael C. v. Berryhill*, No. 17-CV-1395, 2019 WL 1228553, at *5-6, (N.D.N.Y Mar. 15, 2019) (holding that the ALJ properly accounted for

the claimant's moderate limitations in maintaining a regular schedule by "providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting").

To the extent Plaintiff contends that the RFC is deficient because he required more than occasional interactions with supervisors during the work day to fulfill the requirements of a training period, he fails to submit evidence of the need for this additional interaction with supervisors. The Court agrees with Judge Hummel that "'[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.'" R&R 29 (quoting 42 U.S.C. § 423(d)(5)(A)). The lack of evidence supporting this requirement, especially in light of the other evidence showing that Plaintiff was only moderately limited in his ability to interact with others, including supervisors, and only moderately limited in his ability to regulate emotions, control behavior, and maintain well-being, is detrimental to Plaintiff's claim. *See Barry*, 606 F. App'x at 622 ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

To the extent Plaintiff seeks to assign error to Judge Hummel because he did not specifically address Plaintiff's argument that the ALJ's assessment was faulty inasmuch as it omitted discussion of "limitations with interacting with supervisors during a training period," *see* Pl. Obj. at 16-18, the argument is without merit. Judge Hummel addressed limitations arising from the interactions with others, including supervisors, at pages 30-31 of the R&R. Despite that Judge Hummel did not address Plaintiff's argument in the

specific manner in which he framed it, Judge Hummel addressed the substance of the issue and found no error in the application of the RFC assigned by the ALJ.  The Court finds no error in Judge Hummel's conclusion in this regard.

The Court concludes that the ALJ properly exercised his authority to craft the mental RFC, and that in doing so he tied his conclusions to evidence in the record.  The ALJ relied upon substantial evidence arising from the medical records, treatment records, and Plaintiff's statements and activities in assessing the mental RFC, and relied on this information and the VE's testimony in determining whether Plaintiff could perform work that existed in sufficient numbers in the national economy. The Court finds that the ALJ did not improperly interpreted raw medical data in functional terms, or improperly make the connection between the medical data and the functional findings. Rather, the ALJ identified evidence relevant to the RFC determination, and provided an accurate and logical bridge from that evidence such that the Court can glean the ALJ's rationale for the RFC conclusions.  While the RFC findings do not match any single medical opinion, they are, as discussed above, based on substantial evidence derived from the record as a whole.  Accordingly, the Court finds, as did Judge Hummel, that the ALJ's assignment of social limitations is supported by substantial evidence and, therefore, Plaintiff's Objection 1 is overruled.

### Objection 2

As the Commissioner points out, in his initial brief Plaintiff argued that the physical RFC, which contain no postural limitations, was not supported by the medical opinions that the ALJ evaluated. *See* Pl. Br. at 23. Plaintiff raises this same complaint in his Objections, arguing Judge Hummel never addressed this issue. *See* Pl. Obj. at 18-

20. The Commissioner contends that the issue should be addressed under the clear error standard, and that no such error exists

> because the R&R clearly addressed this issue. As Magistrate Judge Hummel appropriately pointed out, "Plaintiff ha[d] not proven a more restrictive RFC" in regards to these postural limitations. R&R at 31, citing *Smith*, 740 F. App'x at 726. Indeed, other than pointing out that the opinions of record identified varying levels of postural limitation, Plaintiff identifies no medical or other evidence supporting any postural limitations whatsoever. *See* Pl. Br. at 23. And Plaintiff fails to do so again. *See* Pl. Obj. at 18-20.

 Def. Br. at 5.

For reasons discussed here, the Court finds that Judge Hummel did not commit error, plain or otherwise, in assessing the postural limitations of the RFC.  As the Commissioner contends, the R&R as a whole explains how the medical opinions in this case supported the RFC for sedentary work with no postural limitations. As Judge Hummel noted, the ALJ considered multiple physicians' assessments when crafting the physical RFC. *See* R&R at 25-27; T. 642-43. That included consultative examiner Dr. Figueroa's opinion that Plaintiff had moderate limitation in prolonged walking and standing, lifting, carrying, and in one postural activity: repetitive bending. *See* T. 1371. Other assessments included the prior administrative medical findings from S. Powell, R. Reynolds, M.D., J. Rosenthal, M.D., and A. Auerbach, M.D., who found Plaintiff could perform a range of medium work with various postural limitations. *See* T. 68-70, 82-85, 736-39, 754-57.  Judge Hummel pointed out the ALJ properly evaluated these opinions and favored Dr. Figueroa's opinion, finding it was "generally persuasive." R&R at 26; *see* T. 642 (ALJ stating "In establishing the claimant's physical residual functional capacity, the undersigned finds the October 5, 2021 opinion that was rendered by Rita Figueroa, M.D., . . . to be generally persuasive."). Given that the ALJ relied on Dr.

Figueroa's opinion to craft the RFC and her opinion contained no postural limitations beyond a moderate limitation in bending/stooping (T. 1371), the ALJ appropriately crafted a sedentary RFC, which, by definition, entails no bending or stooping. *See* T. 631-32; SSR 83-10, 1983 WL 31251 at *5 (explaining sedentary work is "performed primarily in a seated position [and] entails no significant stooping").

As the Commissioner argues,

> it is irrelevant that Plaintiff's physical RFC finding did not perfectly match Dr. Figueroa's opinion. *See* Pl. Obj. at 19-20. As Magistrate Judge Hummel pointed out, it did not have to. R&R at 28, citing *Schillo*, 31 F.4th at 78. Nor did the ALJ err in crafting a sedentary RFC that was ultimately *more* restrictive than Dr. Figueroa's opinion suggested. *See* R. 631-32; R&R at 31, citing *Ivey*, 2020 WL 5046261, at *5.

Def. Br. at 6. The Court agrees with this assessment.

For these reasons, Plaintiff's Objection to the physical RFC is rejected inasmuch as Judge Hummel's R&R and the ALJ's decision addressed to the postural limitations of the RFC are based upon and supported by sufficient evidence, and Plaintiff has failed to establish that Judge Hummel committed error, plain or otherwise, in assessing the postural limitations of the RFC.   Accordingly, Plaintiff's Objection 2 is overruled.

**Objection 3**

In Objection 3, Plaintiff argues, essentially, that Judge Hummel erred in accepting the ALJ's step 5 conclusion because "[t]he ALJ relied upon vocational expert testimony of job numbers reflecting an [Occupational Employment Survey (OES)] group instead of a [Dictionary of Occupational Titles (DOT)] title, and the Commissioner has not met his burden at step 5." Pl. Obj., at 20; *see id.* at 20-25. The Court finds no error, plain or otherwise, in Judge Hummel's assessment in this regard.

As the Commissioner argues, "[i]n challenging the vocational expert's (VE's) testimony, Plaintiff largely ignores Magistrate Judge Hummel's detailed and very thorough discussion of this issue. Instead, just as in his initial brief, Plaintiff argues that the VE failed to explain her methodology for calculating job numbers and did not address the conflicts between her testimony and the information contained in the Dictionary of Occupational Titles (DOT)." Def. Br. at 7 (citing Pl. Obj. at 20-25; Pl. Br. at 12-18). The Commissioner also argues that Judge Hummel properly rejected these objections in the first instance, and that Plaintiff has failed to demonstrate "clear error" in the R&R. *Id.*

For the reasons that follow, the Court finds that Judge Hummel did not commit error, plain or otherwise, in his assessment in this regard.

In the R&R, Judge Hummel recounted the VE's testimony in detail and explained how, although she testified in a sometimes-confusing manner, the VE ultimately explained how she calculated the number of sedentary jobs available in the national economy and addressed the conflicts between her testimony and the information contained in the DOT. *See* R&R at 18-20. The VE explained that someone with Plaintiff's limitations could work as a Sorter, Table Worker, and Final Assembler, and that there were tens of thousands of those and similar jobs in the national economy. R&R at 19 (citing T. 669-71). Then, as Judge Hummel noted, the ALJ and Plaintiff's hearing-level representative questioned the VE about inconsistences between her testimony and the DOT, and her methodology for calculating the aforementioned job numbers. *See* R&R at 19-20.

Following a review of the hearing transcript, Judge Hummel summarized the issues and rejected Plaintiff's challenges, finding:

> [A]lthough it would have been better practice for the VE to have explained herself without the need for prompting, the ALJ isolated the issue – whether the job numbers the VE provided all were compatible with plaintiff's specific RFC – and elicited information from the VE confirming this. Thus, although there was initial confusion with the job numbers the VE provided, including the possibility that her numbers included jobs with exertion levels beyond sedentary, following the ALJ's clarifying questioning, the VE explicitly confirmed that the numbers she provided included only jobs that could be performed by the proposed RFC – sedentary jobs.

R&R at 20. Judge Hummel also overruled Plaintiff's complaints that the VE's job numbers reflected not only the number of Sorter, Table Worker, and Final Assembler positions in the economy, but also included similar jobs with different DOT codes. See R&R at 21-23. As he explained, "the ALJ 'did not need to find specific numbers of jobs – all he was required to do was find that 'substantial' positions exist.'" R&R at 21 (quoting *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 450 n.6 (2d Cir. 2012)). Here, the ALJ had done so.

As the Commissioner indicates, Plaintiff again challenges the VE's methodology of using OES data to calculate the number of Sorter, Table Worker, and Final Assembler jobs available in the national economy. *See* Pl. Obj. at 20-24; Pl. Br. at 13, 14-16. But, as Judge Hummel pointed out, "[i]n this District, OES job groups have been accepted as the source of such [] information." R&R at 22 (citing *Michelle M. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1065 (TWD), 2020 WL 495170, at *9 (N.D.N.Y. Jan. 30, 2020), *Shanan L. v. Comm'r of Soc. Sec.*, No. 3:19-CV-545 (ATB), 2020 WL 2404763, at *10 (N.D.N.Y. May 12, 2020) (accepting "broad OES figures" as the basis for a finding that significant numbers of jobs exist in the national economy which the plaintiff would be capable of

performing). He further pointed out that "'the Second Circuit does not require a detailed scrutiny of a vocational expert's methods.'" R&R at 23 (quoting *Poole v. Saul*, 462 F.Supp.3d 137, 164 (D. Conn. 2020)). While Plaintiff argues that *Michelle M.* and *Shanan L.* are inapposite because here, unlike those cases, Plaintiff's hearing-level representative challenged the VE's use of OES survey data (Pl. Obj. at 21-22), Judge Hummel explicitly acknowledged that point but, nonetheless, found these cases remained apt. *See* R&R at 22-23.

Relatedly, as the Commissioner argues, there is no merit to Plaintiff's claim that "[t]he VE did not have a methodology other than citing Job Browser Pro" to calculate the number of sedentary jobs available in the national economy. *See* Pl. Obj. at 23. Judge Hummel explicitly explained that the VE "employed 'a program called SkillTRAN. Specifically within that is OccuBrowse Pro,' which allowed her to 'select[] the option to use the OES' and combine numbers for 'jobs that have the same limitations the judge gave, with the same SVP, the same skill level, and the same industry.'" R&R at 23 (citing T. 671-73). Contrary to Plaintiff's claim that the VE never recounted this methodology (Pl. Obj. at 23), Judge Hummel pointed out that, in fact, she did. R&R at 23 ("The VE eventually fully explained her methodology."). And so too did the ALJ in the decision. Indeed, Judge Hummel indicates that "[t]he ALJ clarifies later that 'jobs numbers that [the VE gave] referred to specific DOT occupations within particular OES groups that could be performed with the claimant's residual functional capacity.'" R&R at 23 (citing T. 647).

In the end, Plaintiff has pointed to no error, clear or otherwise, in Judge Hummel's thorough discussion of the issues described above. *See* Pl. Obj. at 20-25.

The Court agrees with the Commissioner that Judge Hummel's "careful evaluation of the VE's testimony showed that, despite some confusing moments during the hearing, 'the VE explicitly confirmed that the numbers she provided included only jobs that could be performed by the proposed RFC' (R&R at 20); '[t]he VE eventually fully explained her methodology' (R&R at 23); courts in this District have found it appropriate for a VE to rely on OES data (R&R at 22); and the ALJ recounted the VE's methodology in the decision (R&R at 23, citing R. 647)." Def. Br., at 9-10. Accordingly, Plaintiff's Objection 3 is overruled.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's objections to Judge Hummel's Report and Recommendation (Dkt. 14), are **OVERRULED**. Accordingly, it is hereby

**ORDERED** that the Report and Recommendation (Dkt. 14) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the Commissioner's determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. 1) is **DISMISSED.**

The Clerk of the Court is respectfully directed to close the file in this matter.

**IT IS SO ORDERED.**

Dated: December 10, 2024

Brenda K. Sannes
Chief U.S. District Judge